**JWB**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gary Andre Lacy, | No. CV 1-07-0381-JMR |
| Plaintiff, | **ORDER** |
| vs. | |
| H. Tyson, et al., | |
| Defendants. | |

Before the Court is Plaintiff's Second Amended Complaint (Doc. # 16), filed in compliance with the Court's March 27, 2009 Order (Doc. # 15). The Court will order Defendants R. Reyna, Correa, Peacock, Bremnar, Brookwalter, T. Reyna, Tyson, Aspeitia, and Patel to answer Counts I, II, and IV of the Second Amended Complaint and dismiss the remaining claims and Defendant without prejudice.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

JDDL

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

## II.   Second Amended Complaint

Plaintiff sues Kern Valley State Prison (KVSP) employees: Captain H. Tyson; Chief Deputy N. Dill; Correctional Sergeants M. Bremnar, M. Brookwalter, and J. Peacock; Correctional Officers R. Reyna, T. Reyna, E. Heanacho, N. Correa; Medical Technician Assistant (MTA) Aspeitia; and Doctor I. Patel (Doc. # 16 at 3).

Plaintiff alleges the following facts. On January 27, 2006, R. Reyna approached Plaintiff during chow and demanded that Plaintiff leave his food at the table and exit the dining hall. Once outside, R. Reyna cuffed Plaintiff and slammed his face into the brick wall several times. R. Reyna then stated, "write this one up too[,]" referring to the fact that Plaintiff previously filed a complaint against R. Reyna for misconduct. R. Reyna then twisted Plaintiff's hands and arms above his head, causing severe pain. R. Reyna then escorted Plaintiff to the program office to be assaulted further by other officers. Once Plaintiff was inside the program office, he was "shoved" inside the holding cage and strip

searched. R. Reyna and Correa "twisted and jerked" Plaintiff's arms high in the air, causing pain. Plaintiff then told Peacock, Bremnar, Brookwalter, and T. Reyna that he was just assaulted. Tyson was notified of Plaintiff's allegation and, while Tyson stood in the hallway "supervising," Plaintiff was slammed into the walls and to the ground by Peacock, Bremnar, Brookwalter, R. Reyna, and T. Reyna. Brookwalter, Bremnar, R. Reyna, and T. Reyna then dragged Plaintiff out of the holding cage by his hands and arms across the ground into the hallway where Plaintiff was hoisted into the air and carried across the yard. Brookwalter, Bremnar, R. Reyna, and T. Reyna dropped Plaintiff on his torso in front of housing unit #3. While Plaintiff was on the ground, Brookwalter twisted Plaintiff's shoulder and left arm back- and upwards, as Bremnar pinned Plaintiff's right arm against the concrete and R. Reyna and T. Reyna pressed their knees into Plaintiff's legs and lower back. Brookwalter then ordered Plaintiff to stand while violently twisting Plaintiff's arm. Bremnar lifted Plaintiff up and he was carried to his housing unit where he was sent face first through the open hall window and punched in the ribs by R. Reyna. Plaintiff was then forced into his cell.

Plaintiff sought medical treatment, but Tyson, Peacock, Brookwalter, Bremnar, and Aspeitia denied his requests. Plaintiff's cellmate noticed Plaintiff's injuries and alerted prison officials. Plaintiff was seen by Dr. Akanno who determined Plaintiff needed x-rays and other treatment as a result of the assault. Aspeitia told Plaintiff the reason she refused to provide Plaintiff with medical treatment was because he was a rat and lived on a protective custody yard.

On January 30, 2006, Plaintiff's mother began calling the KVSP ombudsman and Warden to find out why no incident or use of force reports were filed in connection with the January 27, 2006 incident. Tyson then called Plaintiff into a meeting where Plaintiff told Tyson that he saw him in the hallway watching as he was being assaulted and asked Tyson why no investigation was taking place. Tyson sent Plaintiff back to his cell.

On February 1, 2006, Plaintiff filed another staff complaint against R. Reyna, T. Reyna, Heanacho, Correa, Tyson, Brookwalter, and Bremnar for the January 27 assaults.

1 Plaintiff was subsequently transferred to administrative segregation, where he unsuccessfully
2 sought medical treatment for his injuries.  Plaintiff filed medical appeals, but Patel refused
3 to intervene or to ensure Plaintiff received appropriate treatment.

4 On May 11, 2006, Dill informed Plaintiff that his staff complaint was granted and
5 extended Plaintiff's placement in administrative segregation without a rules violation report.
6 Plaintiff remained in administrative segregation from February 2, 2006 until June 23, 2006
7 (141 days).

8 Based on the above facts, Plaintiff asserts six claims for relief.  In Count I, Plaintiff
9 claims that R. Reyna retaliated against him for filing a staff complaint in violation of his First
10 Amendment rights.  In Count II, Plaintiff claims that R. Reyna, Correa, Peacock, Bremnar,
11 Brookwalter, T. Reyna, and Tyson used excessive force against him in violation of his Eighth
12 Amendment rights.  In Count III, Plaintiff contends that Tyson, R. Reyna, T. Reyna,
13 Heanacho, Correa, Peacock, Brookwalter, Bremnar, and Dill violated his right to equal
14 protection under the law because other similarly-situated inmates would likely not have had
15 their rights violated.  In Count IV, Plaintiff claims that Tyson, Peacock, Brookwalter,
16 Bremnar, Aspeitia, and Patel were deliberately indifferent to Plaintiff's serious medical needs
17 when they knew that Plaintiff required treatment after the January 27 assaults, but failed to
18 take any action.  In Count V, Plaintiff alleges that his equal protection rights were violated
19 when he was sent to administrative segregation after he filed a staff complaint regarding the
20 January 27 assault.  Plaintiff claims that other inmates would likely have received equal
21 protection.  And in Count VI, Plaintiff claims that Dill acted arbitrarily when she sent
22 Plaintiff to administrative segregation after he filed a staff complaint, which allegedly
23 violated his equal protection rights because other inmates would likely have had their
24 liberties protected.

25 **III.   Failure to State a Claim**

26     **A.   Equal Protection Claims - Counts III, V, and VI**

27 A plaintiff can establish an equal protection claim in one of two ways: (1) by showing
28 that a fundamental right is involved or that a defendant intentionally discriminated against

him on the basis of his membership in a suspect class, such as race, see Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); or (2) by showing that he is a member of an identifiable class, that he was intentionally treated differently from others similarly situated, and that there was no rational basis for the different treatment, see Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

In his Second Amended Complaint, Plaintiff does not allege that a fundamental right is involved or that he is a member of a suspect class. Nor does he allege that Defendants treated him differently from similarly situated prisoners, without a rational basis, *and* based upon an impermissible motive. Rather, Plaintiff alleges that other inmates "would likely get the protection required by law" (Doc. # 16 at 6, 9-10). This speculative assertion is insufficient to state a claim. Plaintiff does not even allege that any other inmates are actually treated differently. Plaintiff's conclusory claim is not entitled to a presumption of truth. Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, Plaintiff has failed to state a cognizable equal protection claim and Counts III, V, and VI. Because Dill and Heanacho were only named in Counts III, V, and VI, they will be dismissed.

**B.     Retaliation Claims - Counts V and VI**

To the extent that Plaintiff attempts to present retaliation claims in Counts V and VI, those allegations similarly fail to state a claim. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) was not narrowly tailored to advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-58 (9th Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate must show (1) that the prison official acted in retaliation for the exercise of a constitutionally-protected right, and (2) that the action "advanced no legitimate penological interest").

In Counts V and VI of his Second Amended Complaint, Plaintiff alleges that he was transferred to administrative segregation after he filed a staff complaint regarding the January 27, 2006 staff assaults.  Because Plaintiff has not alleged that there was no legitimate penological goal in transferring him to administrative segregation, Plaintiff's retaliation claim must be dismissed.  This reason alone warrants dismissal of retaliation claims.  See Rhodes, 408 F.3d at 567.

Alternatively, the Court finds that Plaintiff's retaliation claims should be dismissed as implausible.  As noted earlier, to state a cognizable claim for relief, a plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp, 550 U.S. at 570)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

In Iqbal, the Court held that, taken as true, the plaintiff's specific factual allegations were consistent with his claim of unconstitutional discrimination.  But the Court further held that the plaintiff's non-conclusory factual allegations were "not plausible" because there were other "more likely explanations" for the defendants' conduct. Id. at 1951.  Here, because there is a more likely explanation for Plaintiff's transfer to administrative segregation, the Court finds that Plaintiff has failed to allege sufficient non-conclusory facts to support a plausible claim that Dill retaliated against Plaintiff for filing a staff complaint.

The Second Amended Complaint itself provides a more likely explanation for Dill's conduct and state of mind: Plaintiff had filed a staff complaint against no fewer than seven officers for assaulting him (Doc. # 16 at 9).  A more likely, and plausible, explanation for placement in administrative segregation was for his own protection, rather than as retaliation or to punish.  Plaintiff's retaliation claim, therefore, fails to state a cognizable claim for relief.

**IV.    Claims for Which an Answer Will be Required**

The Court will require R. Reyna, Correa, Peacock, Bremnar, Brookwalter, T. Reyna, Tyson, Aspeitia, and Patel to answer Counts I (excessive force and retaliation), II (excessive force), and IV (deliberate indifference to serious medical needs).

**V.     Warnings**

    **A.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

    **B.     Copies**

Plaintiff must submit an additional copy of every filing for use by the Court.  See LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

    **C.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Counts III, V, and VI and Defendants Dill and Heanacho are **dismissed** without prejudice.

(2)     Defendants R. Reyna, Correa, Peacock, Bremnar, Brookwalter, T. Reyna, Tyson, Aspeitia, and Patel must answer Counts I, II, and IV.

(3)     The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint (Doc. #16), this Order, a Notice of Submission of Documents form, an instruction sheet, and copies of summons and USM-285 forms for Defendants R. Reyna, Correa, Peacock, Bremnar, Brookwalter, T. Reyna, Tyson, Aspeitia, and Patel.

(4) Within **30 days** of the date of filing of this Order, Plaintiff must complete and return to the Clerk of Court the Notice of Submission of Documents. Plaintiff must submit with the Notice of Submission of Documents: a copy of the Second Amended Complaint for each Defendant, a copy of this Order for each Defendant, a completed summons for each Defendant, and a completed USM-285 for each Defendant.

(5) Plaintiff must not attempt service on Defendants and must not request waiver of service. Once the Clerk of Court has received the Notice of Submission of Documents and the required documents, the Court will direct the United States Marshal to seek waiver of service from each Defendant or serve each Defendant.

(6) **If Plaintiff fails to return the Notice of Submission of Documents and the required documents within 30 days of the date of filing of this Order, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice.** See **Fed. R. Civ. P. 41(b).**

DATED this 27th day of August, 2009.

_____
John M. Roll
Chief United States District Judge