1
2
3
4
5
6
7          **UNITED STATES DISTRICT COURT**
8              EASTERN DISTRICT OF CALIFORNIA
9
10    GARY ANDRE LACY,              )    1:07-cv-00381-LJO-GSA-PC
                                    )
11                                  )    ORDER GRANTING IN PART AND
               Plaintiff,           )    DENYING IN PART PLAINTIFF'S
12                                  )    MOTION TO COMPEL RESPONSES TO
          vs.                       )    FIRST SET OF INTERROGATORIES
13                                  )    (Doc. 59.)
                                    )
14    H. TYSON, et al.,             )    FORTY-FIVE DAY DEADLINE FOR
                                    )    DEFENDANTS BREMNER,
15                                  )    BROOKWALTER, CORREA, PEACOCK,
               Defendants.          )    AND TYSON TO RESPOND TO
16                                  )    INTERROGATORY NO. 10 AS
                                    )    INSTRUCTED BY THIS ORDER
17                                  )
18    _____)

19    **I.    RELEVANT PROCEDURAL HISTORY**

20          Gary Andre Lacy ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in

21    this civil rights action pursuant to 42 U.S.C. § 1983.  This action now proceeds on the Second

22    Amended Complaint, filed on April 28, 2009, against defendants Correctional Officers R. Reyna, T.

23    Reyna, and N. Correa; Correctional Sergeants J. Peacock, M. Bremnar, and M. Brookwalter; Captain

24    H. Tyson; Medical Technician Assistant (MTA) Aspeitia; and Doctor I. Patel; on Plaintiff's claims

25    for excessive force, retaliation, and deliberate indifference to serious medical needs.[1]  (Doc. 16.)

26    _____

27          [1]On August 27, 2009, the Court dismissed Plaintiff's equal protection claim from this action based on
      Plaintiff's failure to state a claim.  (Doc. 17.)  The Court also dismissed defendants Dill and Heanacho from this
28    action based on Plaintiff's failure to state any claims against them.  Id.

                                        1

1    On October 7, 2010, the Court issued a Scheduling Order establishing a deadline of March

2    18, 2011, for the parties to complete discovery.[2]  (Doc. 36.)  On February 8, 2011, Plaintiff filed a

3    motion to compel responses to interrogatories.  (Doc. 59.)  On February 14, 2011, the Court entered

4    an order staying this entire action and vacating Plaintiff's motion to compel.  (Doc. 63.)   On

5    September 7, 2011, the Court lifted the stay and reinstated Plaintiff's motion to compel.  (Doc. 72.)

6    On October 7, 2011, Defendants filed an opposition to the motion to compel.  (Doc. 84.)  On October

7    19, 2011, Plaintiff filed a reply to the opposition.  (Doc. 87.)  Plaintiff's motion to compel is now

8    before the Court.

9    **II.   PLAINTIFF'S ALLEGATIONS AND CLAIMS**

10          <u>Allegations in the Second Amended Complaint</u>

11          In the Second Amended Complaint, Plaintiff sues Kern Valley State Prison (KVSP)

12   employees: Captain H. Tyson; Chief Deputy N. Dill; Correctional Sergeants M. Bremnar, M.

13   Brookwalter, and J. Peacock; Correctional Officers R. Reyna, T. Reyna, E. Heanacho, and N. Correa;

14   Medical Technician Assistant (MTA) Aspeitia; and Doctor I. Patel (Doc. 16 at 3).

15          Plaintiff alleges the following facts.  On January 27, 2006, R. Reyna approached Plaintiff

16   during chow and demanded that Plaintiff leave his food at the table and exit the dining hall.  Once

17   outside, R. Reyna cuffed Plaintiff and slammed his face into the brick wall several times.  R. Reyna

18   then stated, "write this one up too[,]" referring to the fact that Plaintiff previously filed a complaint

19   against R. Reyna for misconduct.  R. Reyna then twisted Plaintiff's hands and arms above his head,

20   causing severe pain.  R. Reyna then escorted Plaintiff to the program office to be assaulted further by

21   other officers.  Once Plaintiff was inside the program office, he was "shoved" inside the holding cage

22   and strip searched.  R. Reyna and Correa "twisted and jerked" Plaintiff's arms high in the air, causing

23   pain.  Plaintiff then told Peacock, Bremnar, Brookwalter, and T. Reyna that he was just assaulted.

24   Tyson was notified of Plaintiff's allegation and, while Tyson stood in the hallway "supervising,"

25   Plaintiff was slammed into the walls and to the ground by Peacock, Bremnar, Brookwalter, R. Reyna,

26

27          [2]The deadline for the completion of discovery, including the filing of motions to compel, was subsequently
28   extended twice, and the current deadline expired on March 15, 2012.  (Docs. 73, 98.)

and T. Reyna.  Brookwalter, Bremnar, R. Reyna, and T. Reyna then dragged Plaintiff out of the holding cage by his hands and arms across the ground into the hallway where Plaintiff was hoisted into the air and carried across the yard. Brookwalter, Bremnar, R. Reyna, and T. Reyna dropped Plaintiff on his torso in front of housing unit #3.  While Plaintiff was on the ground, Brookwalter twisted Plaintiff's shoulder and left arm back and upwards, as Bremnar pinned Plaintiff's right arm against the concrete and R. Reyna and T. Reyna pressed their knees into Plaintiff's legs and lower back.  Brookwalter then ordered Plaintiff to stand while violently twisting Plaintiff's arm.  Bremnar lifted Plaintiff up and he was carried to his housing unit where he was sent face first through the open hall window and punched in the ribs by R. Reyna. Plaintiff was then forced into his cell.

Plaintiff sought medical treatment, but Tyson, Peacock, Brookwalter, Bremnar, and Aspeitia denied his requests.  Plaintiff's cell mate noticed Plaintiff's injuries and alerted prison officials. Plaintiff was seen by Dr. Akanno who determined Plaintiff needed x-rays and other treatment as a result of the assault. Aspeitia told Plaintiff the reason she refused to provide Plaintiff with medical treatment was because he was a rat and lived on a protective custody yard.

On January 30, 2006, Plaintiff's mother began calling the KVSP ombudsman and Warden to find out why no incident or use of force reports were filed in connection with the January 27, 2006 incident. Tyson then called Plaintiff into a meeting where Plaintiff told Tyson that he saw him in the hallway watching as he was being assaulted and asked Tyson why no investigation was taking place. Tyson sent Plaintiff back to his cell.

On February 1, 2006, Plaintiff filed another staff complaint against R. Reyna, T. Reyna, Heanacho, Correa, Tyson, Brookwalter, and Bremnar for the January 27 assaults.  Plaintiff was subsequently transferred to administrative segregation, where he unsuccessfully sought medical treatment for his injuries.  Plaintiff filed medical appeals, but Patel refused to intervene or to ensure Plaintiff received appropriate treatment.  On May 11, 2006, Dill informed Plaintiff that his staff complaint was granted and extended Plaintiff's placement in administrative segregation without a rules violation report.  Plaintiff remained in administrative segregation from February 2, 2006 until June 23, 2006 (141 days).

1   Based on the above facts, Plaintiff asserts six claims for relief.  In Claim I, Plaintiff claims that

2 R. Reyna retaliated against him for filing a staff complaint in violation of his First Amendment rights.

3 In Claim II, Plaintiff claims that R. Reyna, Correa, Peacock, Bremnar, Brookwalter, T. Reyna, and

4 Tyson used excessive force against him in violation of his Eighth Amendment rights.  In Claim III,

5 Plaintiff contends that Tyson, R. Reyna, T. Reyna, Heanacho, Correa, Peacock, Brookwalter,

6 Bremnar, and Dill violated his right to equal protection under the law because other similarly-situated

7 inmates would likely not have had their rights violated.  In Claim IV, Plaintiff claims that Tyson,

8 Peacock, Brookwalter, Bremnar, Aspeitia, and Patel were deliberately indifferent to Plaintiff's serious

9 medical needs when they knew that Plaintiff required treatment after the January 27 assaults, but

10 failed to take any action. In Claim V, Plaintiff alleges that his equal protection rights were violated

11 when he was sent to administrative segregation after he filed a staff complaint regarding the January

12 27 assault.  And in Claim VI, Plaintiff claims that Dill acted arbitrarily when she sent Plaintiff to

13 administrative segregation after he filed a staff complaint, which allegedly violated his equal

14 protection rights because other inmates would likely have had their liberties protected.

15   Plaintiff requests monetary damages.

16 **Plaintiff's Claims**

17   Plaintiff now proceeds on claims for excessive force, retaliation, and deliberate indifference

18 to serious medical needs.[3]

19       ***Eighth Amendment Excessive Force Claim***

20   "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

21 Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v.

22 McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . .

23 contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and

24 citations omitted).  The malicious and sadistic use of force to cause harm always violates

25 contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at

26

27    [3]As stated above, Plaintiff's equal protection claim was dismissed by the Court on August 27, 2009, for
failure to state a claim.  (Doc. 17.)

28

9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).   However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind."  Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id.  (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### *First Amendment Retaliation Claim*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (quotation marks omitted); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

### *Eighth Amendment Medical Claim*

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this
///

course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d

330, 332 (9th Cir. 1996) (internal citations omitted).

## III.   MOTION TO COMPEL

### A.   Federal Rules of Civil Procedure 26(b), 33(a), and 37(a)

Under Rule 26(b), "[U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 33(a), an interrogatory may relate to any matter that may be inquired into under Rule 26(b).  Fed. R. Civ. P. 33(a)(2).

Pursuant to Rule 37(a), a party propounding discovery may seek an order compelling disclosure when an opposing party has failed to respond or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)(3).  An evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).   It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."  <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1473 (9th Cir.1992) (citing <u>Davis v. Fendler</u>, 650 F.2d 1154, 1160 (9th Cir.1981)).  The moving party bears the burden of demonstrating "actual and substantial prejudice" from the denial of discovery. <u>See</u> <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002) (citations omitted.).

### A.   Plaintiff's Motion

Plaintiff seeks an order compelling defendants Bremner, Brookwalter, Peacock, Correa, Tyson, and Patel to fully answer certain interrogatories from Plaintiff's First Set of Interrogatories. On October 21, 2010, Plaintiff served identical sets of fourteen interrogatories on defendants

7

Bremner, Brookwalter, and Peacock. (Declaration of Gary Lacy ("Lacy Decl."), Doc. 59 ¶2 and Exhs. 1-3.) On November 11, 2010, Plaintiff served a set of fourteen interrogatories on defendant Correa, a set of eighteen interrogatories on defendant Tyson, and a set of ten interrogatories on defendant Patel. (Id. ¶3 and Exhs. 4-6.) Plaintiff seeks to compel defendant Brookwalter to respond to Interrogatories 6-8; defendants Correa and Peacock to respond to Interrogatory No. 6; defendants Bremner, Brookwalter, Correa, Peacock, and Tyson to respond to Interrogatories 9-11; and defendant Patel to respond to all of Plaintiff's interrogatories. The sets of Interrogatories 6-8 served on defendants Brookwalter, Correa, and Peacock were identical, and the sets of Interrogatories 9-11 served on defendants Bremner, Brookwalter, Peacock, Correa, and Tyson were identical. (Motion at 3:11-28 and Exhs. 1-4, 6.)

## B. **Defendants' Opposition**

Defendant Patel opposes Plaintiff's motion against him on the ground that defendant Patel's responses were not yet due when Plaintiff filed his motion on February 8, 2011. Defendant Patel asserts that the Court granted him an extension of time until October 27, 2011 to respond to Plaintiff's interrogatories. (Doc. 77.) The Court's record confirms that defendant Patel's responses were not due until October 27, 2011. Id. Therefore, Plaintiff's motion to compel responses from defendant Patel is moot and shall be denied.

Defendants Bremner, Brookwalter, Peacock, Correa, and Tyson argue that they properly responded to Plaintiff's interrogatories and made meritorious objections. The Court shall separately address each interrogatory at issue.

## C. **Discussion**

### (1)   **INTERROGATORY NO. 6:**

"If your answer to interrogatory no. 5 is yes, please provide the name, CDCR number, and current location of each inmate against whom you've generated such documentation."

### **RESPONSE TO INTERROGATORY NO. 6:**

Defendants Brookwalter, Peacock, and Correa each made this same response to Interrogatory No. 6:

"Defendant objects to this interrogatory on the grounds that it is burdensome and overbroad because it is not limited in time, and would require Defendant to review every document he has generated from the time of his employment to look for the phrase 'passive resistance.' Defendant further objects on the grounds that disclosure of the information requested, [] would violate the right of privacy of other inmates. Defendant further objects on the grounds that this interrogatory seeks information that is not relevant or calculated to lead to the discovery of admissible evidence."

Plaintiff argues that defendants Brookwalter, Peacock, and Correa's objections and responses to Interrogatory No. 6 were frivolous, and asserts that the interrogatory is "calculated to lead to the discovery of excessive force and failing to take corrective action," is admissible under Rule 404(b), and is highly relevant to Plaintiff's claims of supervisory liability against defendant Tyson. (Motion, Doc. 59 at 5:25-26.)

By way of background, Defendants explain that Interrogatory No. 6 referred to the prior Interrogatory No. 5 which asked whether, during the course of Defendants' employment, they had ever issued any document against any inmate for engaging in passive resistance. (E.g., Motion, Doc. 59 at 44.) Defendants objected to Interrogatory No. 5 on several grounds, including that the request was overbroad and burdensome, potentially requiring Defendants to review thousands of documents generated regarding thousands of inmates to ascertain the answer. (See id. at 51.) Subject to the objections, Defendants responded that they did not have a recollection at the time. (Id.) In response to Plaintiff's motion to compel, Defendants argue that because their response to Interrogatory No. 5 was not "yes," then by the plain terms of the interrogatory, no additional response to Interrogatory No. 6 was required, but they nevertheless asserted appropriate objections to this interrogatory, because failure to do so could result in a waiver of such objections.

Plaintiff's motion to compel further responses to Interrogatory No. 6 shall be denied. By the language of the interrogatory, the requirement for Defendants to respond to Interrogatory No. 6 is conditioned on whether they responded "yes" to Interrogatory No. 5. Because Defendants did not respond "yes" to Interrogatory No. 5, they were not required to make any response to Interrogatory No. 6. Therefore, defendants Brookwalter, Peacock, and Correa shall not be required to respond further to Interrogatory No. 5.

1    **(2)    INTERROGATORY NO. 7:**

2        "On January 27, 2006, was my telephone book confiscated by an officer
because the book contained information regarding another inmate who was under
3    investigation?"

4                    **RESPONSE TO INTERROGATORY NO. 7**

5    Defendant Brookwalter made this response to Interrogatory No. 7:

6        "Defendant objects to this interrogatory on the grounds that it is compound
because it asks two questions.  Defendant further objects on the grounds that it calls
7    for this responding party to speculate why Plaintiff's telephone book was taken, if it
was taken at [all] by someone other than Defendant.  Defendant further objects on the
8    grounds that [it] is vague because it assumes facts that Plaintiff's telephone book was
taken by an officer, and that another inmate is under investigation.  Defendant further
9    objects on the grounds that it seeks information that is not relevant to Plaintiff's claim
of excessive force on January 27, 2006, and is not calculated to lead to the discovery
10   of admissible evidence.
        Without waiving these objections, Defendant responds as follows:
11       I have no information at this time other than what is stated in form 128 A dated
January 27, 2006, which is attached at Exhibit A."
12
     (Exhibit A is a copy of a one-page CDC 128-A form dated January 27, 2006 and signed by
13
defendant Brookwalter.)
14
     Plaintiff argues that defendant Brookwalter failed to state under penalty of perjury that the
15
information contained within the January 27, 2006, CDC 128-A form was "true and correct," and
16
argues that the defendant is required to state this under penalty of perjury pursuant to Federal Rule
17
of Civil Procedure 33(b)(3).
18
     Defendants direct Plaintiff to the one-page verification at the end of defendant Brookwalter's
19
Responses to the Interrogatories, signed by defendant Brookwalter, which states:
20
     "I, M. Brookwalter, declare:  I am a Defendant in the above entitled action.  I have read the
21   foregoing Responses to Interrogatories, Set One, and know the contents thereof.  The same
is true of my own knowledge, except as to those matters which are therein stated on
22   information and belief, and as to those matters I believe it to be true.  I declare under penalty
of perjury under the laws of the State of California that the foregoing is true and correct of my
23   own knowledge.  Signed this 20th day of December, 2010, in Tulare, California." (Motion,
Doc. 59 at 70.)
24
25   Defendants also cite to Rule 33(d) which permits a responding party to identify records that a party
26   may examine to ascertain the answer to an interrogatory.  Fed. R. Civ. P. 33(d).
27       Plaintiff's motion to compel a further response to Interrogatory No. 7 shall be denied.
28   Defendant Brookwalter has presented evidence that he verified "under penalty of perjury" that his

1   Responses to Plaintiff's Interrogatories are "true and correct." (Motion, Doc. 59 at 70.) Defendant

2   is not required under Rule 33(b)(3) to make a separate declaration attesting to the truth of the

3   information contained in the attachment to the interrogatory.

4                           **(3)    INTERROGATORY NO. 8:**

5           "If your answer to interrogatory no. 7, is yes, please provide the following
       information:

6               a.    the name, CDCR number, and current location of the inmate who was
                     being investigated;

7               b.    the name, employee identification number, and current business
                     address of the officer conducting the investigation; and

8               c.    whether the investigation has concluded."

9                        **RESPONSE TO INTERROGATORY NO. 8**

10  Defendant Brookwalter made this response to Interrogatory No. 8:

11          "Defendant objects to this interrogatory on the grounds that it is vague because
       it assumes a fact that another inmate is under investigation. Defendant further objects

12      on the grounds that it seeks information that is not relevant to Plaintiff's claim of
       excessive force on January 27, 2006, and is not calculated to lead to the discovery of

13      admissible evidence. Defendant further objects on the grounds that his interrogatory
       seeks information that is deemed confidential under Cal. Code Regs. tit. 15 § 3321,

14      the disclosure of which could: (1) endanger the safety of other inmates and staff of
       the CDCR, (2) jeopardize the security of the institution, or (3) contain information that

15      is deemed confidential by another governmental agency. Defendant further objects
       to the disclosure of confidential information on the grounds that an inmate shall not

16      have access to information designated confidential. Cal. Code Regs. tit 15, § 3370(d).
       Defendant further objects on the grounds that it seeks information that is not relevant

17      to Plaintiff's claim of excessive force on January 27, 2006, and is not calculated to
       lead to the discovery of admissible evidence. Without waiving these objections,

18      Defendant responds as follows:
               Not applicable."

19

20          Plaintiff argues that this interrogatory is highly relevant because defendant Brookwalter has

21  stated that Plaintiff's address book was confiscated for investigatory purposes, and it would impeach

22  the defendant's credibility if Plaintiff can prove that his address book was not confiscated for

23  investigatory purposes.

24          By way of background, Defendants explain that Interrogatory No. 8 referred to the prior

25  Interrogatory No. 7 which asked, "On January 27, 2006, was my telephone book confiscated by an

26  officer because the book contained information regarding another inmate who was under

27  investigation?" (Motion, Doc. 59 at 64.) Defendant Brookwalter objected to Interrogatory No. 7 on

28  several grounds, including that it is compound, calls for speculation, is vague and ambiguous, does

1    not seek information relevant to Plaintiff's claim of excessive force on January 27, 2006, and is not

2    likely to lead to the discovery of admissible evidence. (Id.) Subject to the objections, defendant

3    Brookwalter responded, "I have no information at this time other than what is stated in form 128 A

4    dated January 27, 2006, which is attached as Exhibit A." (Id.) Defendant Brookwalter argues that

5    because his response to Interrogatory No. 7 was not "yes," by the plain terms of the interrogatory, no

6    additional response to number 8 was required. Defendant asserts that nevertheless, he made

7    appropriate objections to this interrogatory, because failure to do so could result in a waiver of such

8    objections. Fed. R. Civ. Proc. 33(b)(4). Defendant argues that he properly objected to this

9    interrogatory because it is vague, since it assumes a fact that another inmate is under investigation,

10   and seeks information determined to be confidential under Cal. Code Regs. tit. 15, § 3321, the

11   disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, (2)

12   jeopardize the security of the institution, or (3) contain information that is deemed confidential by

13   another governmental agency. (See Stebbins Decl., Doc. 84-1 ¶¶ 10-11.) Defendant also argues that

14   inmates are not to have access to confidential information pursuant to Cal. Code Regs. tit. 15, §

15   3370(d).

16          Plaintiff's motion to compel a further response to Interrogatory No. 8 shall be denied. The

17   probative value of this evidence is substantially outweighed by a danger that confidential information

18   about an investigation will be disclosed. Fed. R. Evid. 403. Defendants' objection, that disclosure

19   of sensitive information may endanger the safety of other inmates and staff of the CDCR and

20   jeopardize the security of the institution, shall be sustained. Moreover, Plaintiff has not demonstrated

21   why he requires in-depth information about a specific investigation to discover whether his address

22   book was confiscated for investigatory purposes. Therefore, defendant Brookwalter shall not be

23   required to make a further response to Interrogatory No. 8.

24          (**4**)    **INTERROGATORY NO. 9:**

25          "On January 27, 2006, was Facility at KVSP equipped with video cameras
           capable of viewing and recording events that take place on the recreation yards and
26         patio area?"

27   ///

28   ///

1

**RESPONSE TO INTERROGATORY NO. 9**

2       Defendants Bremner, Brookwalter, Correa, Peacock, and Tyson each made this same response

3  to Interrogatory No. 9:

4              "Defendant objects to this interrogatory on the grounds that this request seeks
          information which may contain information that is deemed confidential under Cal.
5          Code Regs. Tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of
          other inmates and staff of the CDCR, (2) jeopardize the security of the institution, or
6          (3) contain information that is deemed confidential by another governmental agency.
          Defendant further objects to the disclosure of confidential information on the grounds
7          that an inmate shall not have access to information designated confidential. Cal. Code
          Regs. tit. 15, § 3370(d). Defendant further objects on the grounds that is it overbroad
8          because it does not specify what facility other than recreation yards and patio area."

9       Plaintiff argues that Defendants did not fully answer this interrogatory, because Defendants

10  did not state how the release of the information would be detrimental to prison security, since he is

11  requesting "general information," concerning whether video cameras were available at KVSP. (Doc.

12  59 6:14-21.) Plaintiff argues that this information is relevant because he seeks to discover whether

13  a video recording of the events of January 27, 2006 was preserved and is available for trial and, if not,

14  whether CDCR and KVSP policies were violated for failing to preserve such a video recording.

15       Defendants maintain that they properly objected to this interrogatory because the information

16  that Plaintiff requests is confidential. (Stebbins Declaration, Doc. 84-1 ¶¶ 3-6.) Defendants argue

17  that informing Plaintiff whether video cameras located within KVSP can monitor and record events

18  that take place on the recreation yards and patio areas would endanger the safety of others, since

19  Defendants would disclose information concerning institutional security of its exercise yards. Id.;

20  Cal. Code Regs. tit. 15, § 3321. Defendants maintain that they properly objected to this interrogatory

21  because Plaintiff did not specify which yard and patio area he wanted information about, and therefore

22  his request was overbroad. Notwithstanding their objections, Defendants state that they are prepared

23  to provide the video recording procedures at KVSP to the Court for an *in camera* review upon the

24  Court's request.

25       Plaintiff's motion to compel further responses to Interrogatory No. 9 shall be denied. Plaintiff

26  has not shown how it is relevant to any of the claims or defenses in this action whether KVSP was

27  "generally" equipped with video cameras on January 27, 2006, or whether surveillance policies were

28  violated. The moving party bears the burden of demonstrating "actual and substantial prejudice" from

13

1   the denial of discovery.  See Hallett, 296 F.3d at 751.  Therefore, Defendants Bremner, Brookwalter,

2   Correa, Peacock, and Tyson shall not be required to respond further to Interrogatory No. 9.

3                        **(5)    INTERROGATORY NO. 10:**

4            "If your answer to interrogatory no. 9 is yes, please answer whether any
         videotape of the events of January 27, 2006, is available and where it can be obtained
5        for viewing at trial."

6                        **RESPONSE TO INTERROGATORY NO. 10:**

7            Defendants Bremner, Brookwalter, Correa, Peacock, and Tyson each made this same response

8   to Interrogatory No. 10:

9            "Defendant objects to this interrogatory on the grounds that this request seeks
         information which may contain information that is deemed confidential under Cal.
10       Code Regs. Tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of
         other inmates and staff of the CDCR, (2) jeopardize the security of the institution, or
11       (3) contain information that is deemed confidential by another governmental agency.
         Defendant further objects to the disclosure of confidential information on the grounds
12       that an inmate shall not have access to information designated confidential.  Cal. Code
         Regs. tit. 15, § 3370(d)."
13

14           Plaintiff argues that this information is relevant because he seeks to discover whether a video

15  recording of the events of January 27, 2006 was preserved and is available for trial.

16           Defendants respond that because their response to Interrogatory No. 9 was not "yes," by the

17  plain terms of the interrogatory, no response to Interrogatory No. 10 was required.   Defendants

18  maintain that nevertheless, they asserted appropriate objections to this interrogatory (Doc. 59 at 53,

19  66, 79, 103-04, 115-16.), because failure to do so could result in a waiver of such objections. Fed. R.

20  Civ. Proc. 33(b)(4).  Defendants maintain that their objections were proper because the information

21  that Plaintiff requests is confidential, and to inform Plaintiff whether a video camera recorded the

22  alleged January 26, 2006, incident would endanger the safety of others at that facility, as it would

23  reveal the security procedures of correctional staff. Cal. Code Regs. tit. 15, § 3321. (Stebbins Decl.,

24  Doc. 84-1 ¶¶ 3-6.)  Defendants argue that such information could disclose the activities of other

25  inmates or staff that could jeopardize their safety. (Id.)  Notwithstanding their objections, Defendants

26  state that they are prepared to provide KVSP's video recording procedures to the Court for an *in*

27  *camera* review upon the Court's request.

28  ///

1    Plaintiff's motion to compel further responses to Interrogatory No. 10 shall be granted.

2    Plaintiff is entitled to propound an interrogatory to discover the location of relevant evidence such

3    as a videotape of the January 27, 2006 event.  Fed. R. Civ. P. 26(b).  Plaintiff has clarified that his

4    primary purpose in asking about video surveillance is to determine whether such a videotape was

5    made and whether it is available for trial.  For Defendants to respond to this query does not require

6    any discussion of the security procedures of correctional staff, the activities of other inmates or staff

7    that could jeopardize their safety, or other confidential information.  Therefore, Defendants Bremner,

8    Brookwalter, Correa, Peacock, and Tyson shall be required to inform Plaintiff, in response to

9    Interrogatory No. 10, whether a video tape of any part of the January 27, 2006 event at issue in this

10   action was taken, whether it still exists, where it is located, and who has custody of it.

11           (6)     **INTERROGATORY NO. 11:**

12           "If your answer to interrogatory no. 9 is no, please describe all CDCR and
             KVSP policies concerning the installment of video cameras on housing facilities, and
13           explain why no cameras were installed on Facility C on January 27, 2006."

14                   **RESPONSE TO INTERROGATORY NO. 11:**

15   Defendants Bremner, Brookwalter, Correa, Peacock, and Tyson each made this same response

16   to Interrogatory No. 11:

17           "Defendant objects to this interrogatory on the grounds that this request seeks
     information which may contain information that is deemed confidential under Cal.
18   Code Regs. Tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of
     other inmates and staff of the CDCR, (2) jeopardize the security of the institution, or
19   (3) contain information that is deemed confidential by another governmental agency.
     Defendant further objects to the disclosure of confidential information on the grounds
20   that an inmate shall not have access to information designated confidential. Cal. Code
     Regs. tit. 15, § 3370(d).  Defendant further objects on the grounds that this
21   interrogatory is compound because it asks two separate questions.  Defendant further
     objects on the grounds that it is argumentative."

22

23           Plaintiff argues that this information is relevant because he seeks to discover whether CDCR

24   and KVSP policies were violated for failing to preserve a video recording of the events of January

25   27, 2006.

26           Defendants respond that because their response to Interrogatory No. 9 was not "no," then by

27   the plain terms of the interrogatory, no additional response to Interrogatory No. 11 was required.

28   Defendants assert that nevertheless, they made appropriate objections to this interrogatory (Doc. 59

1   at 53, 66, 79, 103-04, 115-16.), because failure to do so could result in a waiver of such objections,

2   Fed. R. Civ. Proc. 33(b)(4).  Defendants maintain that they properly objected to this interrogatory

3   because the information that Plaintiff requests is confidential, and informing Plaintiff of information

4   regarding KVSP's video surveillance of its exercise yards would reveal the security procedures of

5   correctional staff, and would endanger the safety of inmates and staff at the facility. Cal. Code Regs.

6   tit. 15, § 3321. (See Stebbins Decl., Doc. 84-1 ¶¶ 3-6.)  Defendants also argue that Interrogatory No.

7   11 is argumentative.  Notwithstanding their objections, Defendants state that they are prepared to

8   provide KVSP's video recording procedures to the Court for an *in camera* review upon the Court's

9   request.

10          Plaintiff's motion to compel further responses to Interrogatory No. 11 shall be denied.

11  Defendants' objection on the grounds that the information is confidential shall be sustained.  Plaintiff

12  seeks "all CDCR and KVSP policies concerning the installment of video cameras on housing

13  facilities, and [an explanation] why[, if true,] no cameras were installed on Facility C on January 27,

14  2006."  Defendants have credibly explained how disclosure of the prison's surveillance policies to

15  inmates could jeopardize the safety and security of staff and inmates.  (Stebbins Decl., Doc. 81-4 ¶¶

16  3-6.)  The Court finds that the probative value of this evidence is substantially outweighed by a

17  danger that confidential information about prison security will be disclosed.  Fed. R. Evid. 403.

18  Moreover, Plaintiff has not shown how his knowledge of surveillance policies, and whether they were

19  properly followed on January 27, 2006, is relevant to the claims and defenses in this action.  The

20  moving party bears the burden of demonstrating "actual and substantial prejudice" from the denial

21  of discovery.  See Hallett, 296 F.3d at 751.  Therefore, defendants Bremner, Brookwalter, Correa,

22  Peacock, and Tyson shall not be required to provide further responses to Interrogatory No. 11.

23  **IV.     CONCLUSION**

24          Based on the foregoing, IT IS HEREBY ORDERED that:

25          1.      Plaintiff's motion to compel, filed on February 8, 2011, is GRANTED IN PART and

26                  DENIED IN PART;

27          2.      Plaintiff's motion to compel defendant Patel to respond to Plaintiff's Interrogatories

28                  Set One, served on November 11, 2010, is DENIED;

1     3.     Plaintiff's motion to compel defendant Peacock to respond further to Interrogatory No.

2         6, Set One, served on October 21, 2010, is DENIED;

3     4.     Plaintiff's motion to compel defendant Correa to respond further to Interrogatory No.

4         6, Set One, served on November 11, 2010, is DENIED;

5     5.     Plaintiff's motion to compel defendant Brookwalter to respond further to

6         Interrogatories 6-8, Set One, served on October 21, 2010, is DENIED;

7     6.     Plaintiff's motion to compel defendants Bremner, Brookwalter, and Peacock to

8         respond further to Interrogatories Nos. 9 and 11, Set One, served on October 21, 2010,

9         is DENIED;

10    7.     Plaintiff's motion to compel defendants Correa and Tyson to respond further to

11        Interrogatories Nos. 9 and 11, Set One, served on November 11, 2010, is DENIED;

12    8.     Plaintiff's motion to compel defendants Bremner, Brookwalter, and Peacock to

13        respond further to Interrogatory No. 10, Set One, served on October 21, 2010, is

14        GRANTED;

15    9.     Plaintiff's motion to compel defendants Correa and Tyson to respond further to

16        Interrogatory No. 10, Set One, served on November 11, 2010, is GRANTED; and

17    10.    Within forty-five days from the date of service of this order, defendants Bremner,

18        Brookwalter, Correa, Peacock, and Tyson shall serve upon Plaintiff a response to

19        Plaintiff's Interrogatory No. 10, Set One, as instructed by this order.

20

21    IT IS SO ORDERED.

22    **Dated:**   **March 30, 2012**            **/s/ Gary S. Austin**

23                             UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28